[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In the first count of his complaint, the plaintiff alleges that he leased (actually subleased) space in his office to the defendant for a monthly rental of $400. The plaintiff claims that the defendant occupied the space for over a year without paying rent. In the second count, the plaintiff alleges that the defendant was unjustly enriched to the plaintiff's detriment by the defendant's occupancy of the plaintiff's office; the plaintiff seeks damages therefor. There are no overarching legal issues here, just questions of credibility.
The court finds the following facts based on the evidence and inferences drawn therefrom. The plaintiff is a certified public CT Page 8417 accountant doing business as Michaud Company. At all times relevant hereto, he leased an office at suite 505, 129 Church Street, New Haven, Ct., an office building in downtown New Haven. The space consists of two private offices and two common rooms.
In early 1996, the defendant was a commercial real estate broker working for the Lexington Group (Lexington), real estate appraisers. Lexington was located across the hall from the plaintiff. After an aborted merger by Lexington with another appraisal firm (Heberger Associates), the defendant sought space elsewhere. He and the plaintiff discussed the defendant's sharing office space with the plaintiff in the hope that the business of each man could augment the business of the other. At this time the plaintiff's rent was $925 per month.
The defendant moved into the plaintiff's office in March, 1996. The arrangement between the parties was not reduced to writing. The same month, the defendant created a limited liability company (LLC) called Trinity Group by which he did business. He gave the plaintiff business cards for the LLC and showed the plaintiff his new stationary.
On June 7, 1996, the defendant gave the plaintiff a check of Trinity Group in the amount of $1,200. The defendant maintains that this money was to compensate the plaintiff for the defendant's intensive use of the former's equipment, such as his computer, printer and fax machine and copier, during the three month start-up of the defendant's business. On its federal income tax return, Trinity Group reported this expense as rent. The plaintiff likewise reported this money as rent.
The defendant did not pay the plaintiff any more monies. Prior to the defendant's moving out of the office in September, 1997, the plaintiff handed the defendant a memo requesting that the defendant pay rent at $400 per month for the months June, 1996 to September, 1997. The defendant responded that the memo should be directed to Trinity Group.
The defendant maintains that there was no agreement for his payment of rent. To the contrary, the defendant claims, the arrangement was that the defendant would provide the plaintiff with business leads (and vice versa), and that the debt, if any, is the responsibility of Trinity Group. The plaintiff argues that there could not have been any arrangement with Trinity Group because that entity did not exist when the parties made their agreement and when CT Page 8418 the defendant moved into the plaintiff's office. It is unnecessary to resolve this latter claim of law.[1]
Whether the agreement was entered into by the defendant in his individual or representative capacity is a question of fact.Ciucias v. Valley Cab Co., 3 Conn. App. 468, 470, 489 A.2d 411
(1985). The court finds that an agreement was made by the defendant, individually, with the plaintiff. The defendant virtually testified as much, stating that he did not specifically say he would be renting as an LLC. Although the plaintiff may have known that the defendant was forming an LLC, given the prenatal condition of the LLC it is unreasonable to charge the plaintiff with knowledge that by dealing with the defendant he was dealing with the LLC.
While the matter is far from certain, the court further finds that the plaintiff has sustained his burden of proving by a preponderance of the evidence that the defendant agreed to pay the plaintiff $400 a month as rent. Four principal factors tip the scales in the plaintiff's favor with respect to this matter. First, the defendant paid the plaintiff $1,200 in June, 1996, after three months occupancy. This equates to $400 per month.[2] Second, the defendant (as well as the plaintiff) reported this money as rent on an income tax return. Subjectively then, the defendant considered the $1,200 as rent. Third, unremarkably since he is a CPA, the plaintiff, though somewhat younger than the defendant, appears to be a more cautious and precise person than the defendant, though not cautious enough to have had a written sublease. Fourth, since the plaintiff's rent was $925 per month when the parties reached their agreement, the sum of $400 per month is a reasonable amount for the parties to agree as rent for the defendant's use of the space he rented.
I have considered the defendant's testimony that he could have remained where he was, rent free, across the hall from plaintiff, and shared business contacts. What appears likely is that the defendant's business did not pan out as both parties had hoped. Again, while there is evidence militating against such an agreement — such as the plaintiff's sitting on his rights for over a year and his being a CPA without a written sublease — I find that the plaintiff has sustained his burden of proof.
The defendant claims that any sublease by the plaintiff to him was in violation of the plaintiff's lease with his landlord and that, therefore, the plaintiff cannot recover rent from the CT Page 8419 defendant. The plaintiff's lease with his landlord provides: "The Tenant shall not sub-let the demised premises nor any part thereof, nor shall this lease be assigned by the Tenant without the written consent of the Landlord endorsed thereon. Landlord shall not unreasonably withhold approval." The defendant cites Sippin v.Ellam, 24 Conn. App. 385, 588 A.2d 660 (1991), in support of this claim.
The defendant's reliance on Sippin v. Ellam is misplaced. InSippin, the deed to the subject property contained a restrictive covenant. This deed, which predated the lease agreement, barred the use of the property for commercial purposes. Sippin v. Ellam, supra, 24 Conn. App. 387. The local zoning regulations also prohibited any commercial use of property. Id. Despite these prohibitions however, the lessor leased the property to the lessee exclusively for the commercial use of the property. Id. The Appellate Court held that the "trial court correctly concluded that the lease, which it found to be illegal because of the violativeuse of the premises, could not be enforced and that, therefore, there could be no recovery for rent under that lease." (Emphasis added.) Sippin v. Ellam, supra, 24 Conn. App. 390.
Here, by contrast, there is no use which violates either the plaintiff's lease with his landlord or a restrictive covenant. Second, "[i]t is generally said that a restriction against assignment or subletting is for the landlord's benefit. . . .' 1 M. Friedman, Leases (1990) § 7.304d, p. 324." M.R. Wachob Co. v.MBM Partnership, 232 Conn. 645, 665-66, 656 A.2d 1036 (1995). Therefore, "[t]he assignee of a lessee to whom the lease has been assigned in violation of the covenant cannot avail himself of that breach of covenant. . . .' 49 Am.Jur.2d 422, Landlord and Tenant
§ 408 (1970); Morrison v. Nelson, 38 Wash.2d 649, 659,231 P.2d 335 (1951)." Id., 665-66. "The [sublessee], in other words, cannot use [the consent] provision as a means to escape liability to the [lessee] under the . . . agreement." Id. Accordingly, the lessee's actions in subletting the property to the sublessee without the lessor's consent does not render the sublease unenforceable.
The defendant has interposed the special defense of the statute of frauds. The defense has not been briefed and is considered abandoned. Practice Book §§ 5-1, 5-2; see also General Statutes § 52-550 (b); Abel v. Abel, 1 Root 549 (1793).
Since an express agreement has been found, the plaintiff is CT Page 8420 not entitled under the circumstances of this case to recover on the second count of his complaint, which seeks recovery for unjust enrichment. United States Fidelity Guaranty Co. v. MetropolitanProperty Liability Ins. Co., 10 Conn. App. 125, 127,521 A.2d 1048, cert. denied, 203 Conn. 806, 525 A.2d 521 (1987); Menard v.Gentile, 7 Conn. App. 211, 215, 508 A.2d 456 (1986); A CCorporation v. Pernaselci, 2 Conn. App. 264, 265, 477 A.2d 166
(1984).
The plaintiff's damages total $6,000. The file contains an offer of judgment by the plaintiff in the amount of $5,000.00 filed on December 16, 1997. Pursuant to Practice Book §§ 346-350, now Practice Book (1998 Rev.) §§ 17-14 to 17-18, and General Statutes § 52-192a, the plaintiff is entitled to interest in the amount of $360. In the exercise of its legal discretion, the court declines to award attorney's fees pursuant to those provisions or interest pursuant to General Statutes § 37-3a.
Judgment may enter on the first count of the revised complaint in the amount of $6,360. payable at $25.00 per week. Judgment may enter for the defendant on the second count of the revised complaint.
BY THE COURT
Bruce L. Levin Judge of the Superior Court